**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Rashon Markell Pike | ) | |
| | ) | |
| Plaintiff, | ) | NO. 12 C 0094 |
| | ) | |
| v. | ) | Judge Edmond E. Chang |
| | ) | |
| John Foster, et al., | ) | Magistrate Nan R. Nolan |
| | ) | |
| Defendants. | ) | Jury Demanded |

**DFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Defendant Chicago Police Officers Marchand Wright, Lester Vaughn, Isuara Carmona ("the Officers"), and John Foster ("Detective Foster") by and through one of their attorneys Julian Johnson, Assistant Corporation Counsel for the City of Chicago, hereby submit this memorandum of law in support of their motion for summary judgment, pursuant to Fed. R. Civ. P. 56(a), states as follows:

**SUMMARY**

Plaintiff, who was caught fleeing the scene of the crime, now he seeks to use this Court to punish the police officers that arrested him and gain money damages. On August 7, 2014, Plaintiff amended his complaint and alleged Officers Vaughn, Wright, and Carmona, violated his Fourth Amendment constitutional rights. Specifically, Plaintiff alleged that on December 29, 2010, he was merely walking down the street, minding his business, when he was unlawfully stopped for no reason by the Officers and then unlawfully searched and placed under arrest before he was positively identified in showup by the victims of a reported armed robbery. All of the allegations stated in Plaintiff's amended complaint are admittedly not true. Plaintiff leaves no

room for debate as he has admitted to have been running away from the direction of the robbery after hearing police sirens on a cold and snowy night in Chicago when he first saw the Officers. Plaintiff also admits that the Officers stopped him and performed a protective patdown of his outer garments before transporting him to the victims' home for a showup identification. Police officers may conduct a brief investigatory detainment of an individual whom they reasonably suspect, based on specific articulable facts, of engaging in criminal activity. *See Terry v. Ohio*, 392 U.S. 1, 51-22, 30, 88 S.Ct. 1868, 1880, 1884, 20 L.Ed.2d 889 (1968). There is no room for debate regarding the meritless nature of Plaintiff's suit—Plaintiff is unable able to articulate a single constitutional violation he suffered at the hands of these Defendants that would prevent the Court from granting this motion.

## STATEMENT OF FACTS

On December 29, 2010, Willie Creator and his wife, Geraldine Taylor Creator, were returning home when Plaintiff and two other individuals attempted to force their way into the Creator's home at gunpoint and rob them. Statement of Material Undisputed Facts In Support of Defendants' Motion for Summary Judgment ("SOF"), ¶¶9-20. Officers Vaughn, Wright, and Carmona where riding in a car together in close proximity to the Creator's home when they heard a flash message come across their police radio reporting the incident. *Id.* at ¶¶21-22. The message stated that three armed Blacks males, wearing dark clothing, were fleeing westbound from the Creator's home. *Id.* at ¶23. The Officers proceeded to drive towards the direction of the Creator's home when they encountered Plaintiff running at top speed in the snow wearing dark clothing. *Id.* at ¶24. Finding it suspicious that Plaintiff was in close proximity to the scene of the reported crime and matching the description given, the Officers proceeded to perform an investigatory stop of Plaintiff. *Id.* at ¶¶25-26. Officer Vaughn performed a protective patdown

of Plaintiff's outer garments for weapons. *Id.* at ¶¶30-31. Plaintiff was then detained and taken to the Creator's home for a showup identification where he was positively identified as one of the men who attempted enter their home with at gunpoint. *Id.* at ¶¶33-36. After being positively identified by the victims, Plaintiff was then placed under arrest and transported to the seventh district police station. *Id.* at ¶37.

**STANDARD OF REVIEW**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." *Estate of Suskovich v. Anthem Health Plans of Va., Inc.*, 553 F.2d 559, 563 (7th Cir. 2009). This is done by pointing out an absence of evidence to support the non-moving party's case. *Peterson v. Meris, No. 09 C 50120*, 2011 WL 3203675 at *2 (N.D. Ill. July 27, 2011).

A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court draws all reasonable inferences and construes all facts in the light most favorable to the non-moving party. *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir. 1987). But the non-moving party may not simply rest on the pleadings and survive a motion for summary judgment; they must show specific facts demonstrating a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

## ARGUMENT

### I. The Officers Had Reasonable Suspicion To Conduct An Investigatory Stop Of Plaintiff And This Court Must Dismiss His Suit.

The Officers were responding to the incident when they observed Plaintiff running at top speed in the snow, wearing dark clothing, in close proximity to the Creator's home when they performed an investigatory stop. Plaintiff was caught fleeing the victims' home after attempting to violently enter their home at gunpoint and rob them. He believes he can now come back and use this Court as a means to punish the Officers and gain money damages for being caught in the act by claiming that his initial interaction with the Officers was unlawful. He is wrong.

Liability under Section 1983 claims lies only if the seizure is unreasonable. *Hall v. City of Chicago*, 12 C 6834, 2013 WL 5835932 (N.D. Ill. Oct. 30, 2013) (citation omitted). Police officers may conduct a brief investigatory detainment of an individual whom they reasonably suspect, based on specific articulable facts, of engaging in criminal activity. *See Terry v. Ohio*, 392 U.S. 1, 51-22, 30, 88 S.Ct. 1868, 1880, 1884, 20 L.Ed.2d 889 (1968). An investigative seizure is reasonable when it is supported by "reasonable suspicion." *Hall*, 2013 WL 5835932. "Reasonable suspicion is more than a hunch but less than probable cause and considerably less than preponderance of the evidence." *Jewett v. Anders*, 521 F.3d 818, 823 (7th Cir.2008). Whether it is reasonable for an officer to suspect that someone is engaged in wrongdoing calls for an objective inquiry into all of the circumstances known to the officer at the time he stopped the person, including information relayed to him by fellow police officers and police dispatchers. *See e.g., United States v. Hicks,* 531 F.3d 555, 558 (7th Cir.2008); *United States v. Drake*, 456 F.3d 771, 774-775 (7th Cir.2006).

In this case, there is no dispute that the Officers had reasonable suspicion to conduct an investigatory stop of Plaintiff. At the time the Officers initially encountered Plaintiff running at top speed on a cold Chicago night in the snow they were responding to a call of an attempted armed robbery and were in close proximity of the victims' home. SOF, ¶¶24-25. Plaintiff admits he was running when he first saw the Officers. *Id*. at ¶27. Furthermore, the Officers were told over their police radio that armed men wearing dark clothing fled westbound from the victims' home. *Id.* at ¶¶22, 23. Plaintiff admits to have been wearing a dark hoodie when he was running and encountered the Officers. *Id*. at ¶28. Though running alone in close proximity to a crime is not evidence of involvement in a crime, it is "axiomatic that in determining whether officers had the particularized suspicion for a *Terry* stop. . .[to] consider in isolation each variable of the equation that may add up to reasonable suspicion." *Matz v. Klotka*, 769 F.3d 517, 523 (2014). The sum of all information known to the Officers should be considered at the time of the stop—including behavior that may in other contexts seems innocent. *Id.* "[I]n other words, context matters." *Id.* Here plaintiff was not **just** running down the street in a dark hoodie. The Officers were not **just** driving around in their vehicle wasting time. The Plaintiff was running at a high rate of speed, in the snow, on a cold Chicago December night, a few blocks away from the reported scene of the crime when the Officers encountered him as they were looking for a suspect that was described to them as wearing dark clothing fleeing westbound from the crime scene. SOF, ¶¶ 21-29. The speed of the suspect's movements is relevant in the totality of the circumstances for reasonable suspicion. *United States v. Caruthers*, 458 F.3d 459, 466 (6th Cir. 2006).

The Officers observation of Plaintiff, fitting the description of the suspect, near in time and geographic location to the attempted armed robbery established reasonable suspicion that

Plaintiff was the subject of the radio flash message. *See United States v. Lenoir,* 318 F.3d 725, 729 (7th Cir.2003) ("[P]olice observation of an individual, fitting a police dispatch description of a person involved in a disturbance, near in time and geographic location to the disturbance establishes a reasonable suspicion that the individual is the subject of the dispatch.").

Being upset for getting caught is not a constitutional violation. The investigatory stop of Plaintiff was lawful and a reasonable officer presented with those facts and observations would believe he had reasonable suspicion to conduct an investigatory stop of Plaintiff.

## II. The Officers Performed A Lawful Protective Patdown of Plaintiff's Outer Garments.

Not only does Plaintiff attempt to claim he was unlawfully stopped as means to show his displeasure with being caught, he also attempts to turn a routine lawful protective patdown into a full-blown unconstitutional search. Again, he is wrong.

In *Terry*, the Supreme Court recognized the importance of allowing police officers some leeway under the Fourth Amendment in order that they might protect themselves and others. The Court stated in *Terry*:

> "We are now concerned with more than the governmental interest in investigating crime; in addition, there is the more immediate interest of the police officer in taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him. Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties."

*Id* at 23. The Court went on to conclude that the given the inherent dangers of police officers line of work,

> "we cannot blind ourselves to the need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they may lack probable cause for an arrest. When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed

> and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm."

*Id* at 24.

In the present case, the Officers were responding to a report of three armed individuals who were reported to have fled the scene of a crime after attempting to force their way into a home. "In the course of a *Terry* stop, an officer may conduct a protective search for weapons of an individual's person, and area within his control, if 'a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.' " *Cady v. Sheahan.* 467 F.3d 1057, 161-62 (7th Cir.2006). Furthermore, there are certain crimes, such as those involving robbery and burglary, that are by their very nature so suggestive of the presence and use of weapons "**that a frisk is always reasonable when officers have reasonable suspicion that an individual might be involved in such a crime**." *United States v. Barnett,* 505 F.3d 337, 640-41 (7th Cir.2007) (emphasis added). Because these types of crimes are the type of offense "normally and reasonably expected to involve a weapon," police officers do not require additional information that a suspect might be armed before they may perform a protective patdown of someone they suspect of being involved in the crime. *Id*

The Officers had information that the offenders who attempted to rob the Creators and entire their home were armed. SOF, ¶¶ 22-23. The Officers encountered Plaintiff running in close proximity to the Creators' home, moments after the report of the attempted armed robbery, matching the description. Furthermore, Plaintiff admits to having stopped running when he saw the officers approaching him. This can reasonably be seen as an attempt to evade looking suspicious. Under these circumstances, a reasonably prudent officer would be concerned for the

safety of his fellow officers and civilians in the area, as well as for himself. Not only were the officers justified in relying on the information relayed to them by the dispatcher in making the decision to stop Plaintiff for investigative purposes, they were also justified in deciding to perform a protective patdown of plaintiff for weapons. *See U.S. v. Snow*, 656 F3d. 498, 503, (7th Cir.2011) (stating police officer was "rely on the information relayed to him by the 911 dispatcher in making not only the decision to stop Snow for investigative purposes, but also the decision to frisk him for weapons.).

It is also of note that the protective patdown of Plaintiff was brief and only consisted of his outer garments. SOF, ¶¶ 31-32. There was nothing intrusive or evasive about the protective patdown. It comported with what is allowed by *Terry* for an officer to protect himself, fellow officers and surrounding citizens.

## III. Plaintiff Was Not Under Arrest Before He Was Detained For A Showup Identification.

Plaintiff has alleged that he was unlawfully placed under arrest before he was positively identified during the showup. *See* Plaintiff's Amended Complaint, Page 6, ¶38. However, Plaintiff agrees with the Officers that he was not arrested at the scene but rather detained for a showup. SOF, ¶¶ 33& 35. Plaintiff rests his entire claim that he was arrested on the fact that he was placed in handcuffs before being put in the back of police vehicle and taken to the victims' home for the showup identification.

The Seventh Circuit has stated that the use of handcuffs is acceptable in the context of a *Terry* analysis. *See United States v. Tilmon*, 19 F.3d 1221, 1228 (7th Cir.1994); *See also United States v. Bullock*, 632 F.3d 1004, 1016 (7th Cir.2011) (stating the use of handcuffs, placing suspects in police cars, drawing weapons, and other measures of force more traditionally

associated with arrests may be proper during an investigatory detention, depending on the circumstances.) (*citing United States v. Shoals*, 478 F.3d 850, 853 (7th Cir. 2007) (stating that police officers do not convert a *Terry* stop into full a custodial arrest by drawing their weapons or handcuffing the subject, particularly where the situation is inherently dangerous)).

The Officers reasonably suspected plaintiff of being involved in the attempted armed robbery they were responding to. The Officers were reasonable in cuffing Plaintiff as they were all armed and riding in a vehicle that did not contain a protective barrier between the back and front compartments. SOF, ¶ 34. Additionally, Plaintiff was riding in the back of the vehicle with Officer Carmona. *Id*. Certainly the Officers would not allow someone suspected of using a weapon to forcefully gain entry into a home to ride unsecured in the vehicle with them. "It is reasonable for passengers to expect that a police officer at the scene of crime, arrest, or investigation will not let people move around in ways that could jeopardy his safety." *Brendlin v. California*, 551 U.S. 249, 258, 127 S. Ct. 2400, 2407, 168 L. Ed. 2d 132 (2007). The Officers decision to handcuff plaintiff while transporting him to the scene for a show up identification was reasonable and within the confines of *Terry*.

To the extent that Plaintiff makes the argument that being detained for the showup was an arrest, that argument is also unavailing. Police officers are allowed to temporarily detain a suspect under certain circumstances to dispel or verify their suspicion. *See Pliska v. City of Stevens Point, Wis.*, 823 F.2d 1168, 1177 (7th Cir. 1987). In this case, Plaintiff was detained for the purposes of a showup identification just blocks away from where he was initially detained. SOF, ¶¶ 33, 35. Plaintiff was not arrested until after he was positively identified by the victims. SOF, ¶ 36-37.

**IV. Officers Vaughn, Wright, And Carmona Are entitled To Qualified Immunity.**

If, despite evidence to the contrary, this Court finds that Plaintiff suffered some constitutional injury as a result of the Officers' actions, the Court should still grant this motion for summary judgment as the Officers' actions were protected by qualified immunity. The doctrine of qualified immunity shields from liability public officials who perform discretionary duties. *Belcher v. Norton*, 497 F.3d 7452, 749 (7th Cir.2007). Police officers "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted); *see Pearson v. Callahan*, 129 S. Ct. 808 (2009). As the Supreme Court has explained, "the qualified immunity defense…provides protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Biggs*, 475 U.S. 335, 341 (1986) *accord Pourghoraishi v. Flying J., Inc.*, 449 F.3d 751, 761 (7th Cir.2006) (reiterating that "the doctrine of qualified immunity leaves ample room for mistaken judgments by police officers"). Stated another way, qualified immunity will shield the Officers if they can demonstrate that they were performing a discretionary function and that reasonable officers would have believed that, at the time they acted, their discretionary functions were within the bounds of the law. *Belcher*, 497 F.3d at 749; *Saffell v. Crews*, 183 F.3d 655, 658 (7th Cir.1999).

The standards are clearly satisfied here. As previously discussed, Plaintiff fails to show any constitutional deprivation. He fails to show that the Officers performing an investigatory stop after witnessing him running at top speed, matching the description of the suspect was unreasonable. He also fails to show that performing a protective patdown of his outer garments falls outside of *Terry.* And he fails to show how securing him in handcuffs in a vehicle with three

armed police officers transformed into full custodial arrest. Even if this Court finds that Plaintiff has somehow shown that the investigatory stop of him by the Officers and their subsequent actions was unreasonable, qualified immunity is not forfeited because any reasonable officer in Officers Vaughn, Wright, and Carmona's place could have believed their actions and conduct was lawful when they performed an investigatory stop and brief detention of a suspect matching the description given by police dispatch, running away from the direction of a crime scene.

Therefore, Officers Vaughn, Wright and Carmona are entitled to qualified immunity.

**V. Detective Foster Was Not Present At The Scene Of The Investigative Stop.**

Detective Foster did not seize Plaintiff. He first encountered Plaintiff at the police station after he was arrested. SOF, ¶38. Plaintiff admits Detective Foster was not present when the other three defendants detained him. *Id.* According to Plaintiff, he sues Detective Foster because Plaintiff blames him for his incarcerated status. *Id.* at ¶39. However, Detective Foster was not involved in the injuries he alleges. "Section 1983 creates a cause of action based upon personal liability and predicated upon fault. An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." *Jenkins v. Keating*, 147 F.3d 577, 583 (7th Cir. 1998) (citations omitted). In order to survive summary judgment, Plaintiff must prove that Detective Foster is responsible for violating his constitutional rights. *See Pryor v. City of Chicago*, No. 07 C 2479, 2010 WL 3724207, at *5 (N.D. Ill. Sept. 15, 2010) (granting summary judgment in favor of defendants after plaintiff failed to produce evidence that the named defendants caused his alleged injury.) In this case, Plaintiff cannot establish Detective Foster's presence at the scene of his detainment—because Detective Foster was not there and did not seize Plaintiff.

As such, all claims against Detective Foster must be dismissed.

DATED: August 3, 2015

Respectfully Submitted,

/s/ *Julian Johnson*
Julian Johnson
Assistant Corporation Counsel
City of Chicago Department of Law
30 N. LaSalle Street, Suite 900
Chicago, Illinois 60602
T: 312-742-0333
F: 312-744-6566

**CERTIFICATE OF SERVICE**

I, Julian Johnson, hereby certify that on August 3, 2015, I caused a copy **DFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** to be served upon Plaintiff via the ECF filing system.

/s/ Julian Johnson
Julian Johnson